# EMPLOYEE PROPRIETARY INFORMATION, INVENTIONS ASSIGNMENT, NON-COMPETITION AND NON-SOLICITATION AGREEMENT
### (Texas Employees)

In consideration of my employment by Modern Chemical, its subsidiaries, parents, affiliates, successors and assigns (together, the "Company") and other valuable consideration described herein, I hereby enter into this Employee Proprietary Information, Inventions Assignment, Non-Competition and Non-Solicitation Agreement (the "Agreement") and agree as follows:

1. **NONDISCLOSURE.**

   a. **Access to Proprietary Information, Specialized Training and Other Consideration.** My position with the Company requires on-going access to very sensitive areas of the business of the Company, including Proprietary Information (as defined below). My position also requires Specialized Training (as defined below) regarding the Company's products, use of the products, and other technical areas. This Agreement sets forth the terms and conditions of the Company's agreement to provide me additional access to and use of its Proprietary Information and/or my continued access to and use of that information and Specialized Training. I understand and agree that compliance with this Agreement is essential to my relationship or continued relationship with the Company because, without on-going access to the Company's Proprietary Information as well as on-going Specialized Training, I would be unable to commence or continue my relationship with the Company. Accordingly, in consideration of the Company providing me with on-going access to and use of the Company's Proprietary Information and Specialized Training as well as other valuable consideration to be provided to me, the Company and I agree to terms set forth herein.

   b. **Recognition of Company's Rights; Nondisclosure.** I understand and acknowledge that my employment by the Company creates a relationship of confidence and trust with respect to the Company's Proprietary Information and that the Company has a protectable interest therein. At all times during my employment and thereafter, I will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Company's Proprietary Information, except as such disclosure, use or publication may be required in connection with my work for the Company, or unless an authorized officer of the Company expressly authorizes such in writing. I will obtain the Company's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to my work at the Company and/or incorporates any Proprietary Information. I hereby assign to the Company any rights I may have or acquire in such Information and recognize that all Proprietary Information shall be the sole property of the Company and its assigns. I will take all reasonable precautions to prevent the inadvertent or accidental disclosure of Proprietary Information.

EXHIBIT 1

  **c.**  **Proprietary Information.** The term "Proprietary Information" shall mean any and all confidential and/or proprietary knowledge, data or information of the Company, its affiliates, parents and subsidiaries, whether having existed, now existing, or to be developed during my employment. By way of illustration but not limitation, "Proprietary Information" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques and any other proprietary technology and all Proprietary Rights therein (hereinafter collectively referred to as "Inventions"); (b) information regarding research, development, new products, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, margins, discounts, credit terms, pricing and billing policies, quoting procedures, methods of obtaining business, forecasts, future plans and potential strategies, financial projections and business strategies, operational plans, financing and capital raising plans, activities and agreements, internal services and operational manuals, methods of conducting Company business, suppliers and supplier information, and purchasing; (c) information regarding customers and potential customers of the Company, including customer lists, names, representatives, their needs or desires with respect to the types of products or services offered by the Company, proposals, bids, contracts and their contents and parties, the type and quantity of products and services provided or sought to be provided to customers and potential customers of the Company and other non-public information relating to customers and potential customers; (d) information regarding any of the Company's business partners and their services, including names; representatives, proposals, bids, contracts and their contents and parties, the type and quantity of products and services received by the Company, and other non-public information relating to business partners; (e) information regarding personnel, employee lists, compensation, and employee skills; and (f) any other non-public information which a competitor of the Company could use to the competitive disadvantage of the Company. Notwithstanding the foregoing, it is understood that, at all such times, I am free to use information which is generally known in the trade or industry through no breach of this Agreement or other act or omission by me, and I am free to discuss the terms and conditions of my employment with others to the extent expressly permitted by Section 7 of the National Labor Relations Act.

  **d.**  **Specialized Training.** I agree that I could not perform or continue to perform my position absent on-going "Specialized Training," which the Company agrees to provide to me. Specialized Training includes, but is not limited to, training regarding the Company's product(s) and/or sales processes which are confidential and/or proprietary. I acknowledge that use or disclosure of Specialized Training, except as necessary in carrying out my work for the Company, would be detrimental to the legitimate competitive interests of the Company.

  e. **Restricted Access Granted.** In exchange for my agreement not to disclose or use Proprietary Information except as authorized herein, and for the non-competition covenants, non-solicitation covenants, and the other promises made by me herein, the Company grants me immediate, current, and future access to Proprietary Information and Specialized Training required to fulfill the duties of my position. I agree that the Company has no preexisting obligation to reveal Proprietary Information or provide Specialized Training. I further agree to hold all Proprietary Information in the strictest confidence and not to disclose it to any person or entity or to use it, except as necessary in carrying out my work for the Company.

  f. **Third Party Information.** I understand, in addition, that the Company has received and in the future will receive confidential and/or proprietary knowledge, data, or information from third parties ("Third Party Information"). During my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with my work for the Company, Third Party Information unless expressly authorized by an authorized officer of the Company in writing.

  g. **Term of Nondisclosure Restrictions.** I understand that Proprietary Information and Third Party Information is never to be used or disclosed by me, as provided in this Section 1.

  h. **No Improper Use of Information of Prior Employers and Others.** During my employment by the Company I will not improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person.

2. **ASSIGNMENT OF INVENTIONS**

  a. **Proprietary Rights.** The term "Proprietary Rights" shall mean all trade secrets, patents, copyrights, trademarks, works and other intellectual property rights throughout the world.

  b. **Prior Inventions.** Inventions, if any, patented or unpatented, which I made prior to the commencement of my employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, I have set forth on *Exhibit A* (Prior Inventions) attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the

Company, that I consider to be my property or the property of third parties, and that I wish to have excluded from the scope of this Agreement (collectively referred to as "Prior Inventions"). If disclosure of any such Prior Invention would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Prior Inventions in *Exhibit A,* but I am only to disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason. A space is provided on *Exhibit A* for such purpose. If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process or machine, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, fully-paid, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, make derivative works of, publicly perform, use, sell, import, and exercise any and all present and future rights in such Prior Invention. Notwithstanding the foregoing, I agree that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent

      c.      **Assignment of Inventions.** Subject to Subsection 2.4, I hereby assign, grant and convey to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect thereto) whether or not patentable or registrable under copyright or similar statutes, made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company. Inventions assigned to the Company or its designee are hereinafter referred to as **"Company Inventions."**

      d.      **Unassigned or Non-Assignable Inventions.** I recognize that this Agreement will not be deemed to require assignment of any Invention that I developed entirely on my own time without using the Company's equipment, supplies, facilities, trade secrets, or Proprietary Information, except for those Inventions that either (i) relate to the Company's actual or anticipated business, research or development, or (ii) result from or are connected with work performed by me for the Company.

      e.      **Obligation to Keep Company Informed.** During the period of my employment and for one (1) year after termination of my employment with the Company, I will promptly disclose to the Company fully and in writing all Inventions authored, conceived or reduced to practice by me, either alone or jointly with others. In addition, I will promptly disclose to the Company all patent applications filed by me or on my behalf within a year after termination of employment.

      f.      **Ownership of Work Product.** I agree that the Company will exclusively own all work product that is made by me (solely or jointly with others) within the scope of my employment, and I hereby irrevocably and unconditionally assign to the Company all right, title, and interest worldwide in and to such work product. I acknowledge that all

original works of authorship which are made by me (solely or jointly with others) within the scope of my employment and which are protectable by copyright are "works made for hire," pursuant to United States Copyright Act (17 U.S.C., Section 101). I understand and agree that I have no right to publish on, submit for publishing, or use for any publication any work product protected by this Section, except as necessary to perform services for the Company.

      **g.**    **Enforcement of Proprietary Rights.** I will assist the Company in every proper way to obtain, and from time to time enforce, United States and foreign Proprietary Rights relating to Company Inventions in any and all countries. To that end I will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as the Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Proprietary Rights and the assignment thereof. In addition, I will execute, verify and deliver assignments of such Proprietary Rights to the Company or its designee, including the United States or any third party designated by the Company. My obligation to assist the Company with respect to Proprietary Rights relating to such Company Inventions in any and all countries shall continue beyond the termination of my employment, but the Company shall compensate me at a reasonable rate after my termination for the time actually spent by me at the Company's request on such assistance.

In the event the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, which appointment is coupled with an interest, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph with the same legal force and effect as if executed by me. I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of any Proprietary Rights assigned under this Agreement to the Company.

**3.**    **RECORDS.** I agree to keep and maintain adequate and current records (in the form of notes, sketches, drawings and in any other form that may be required by the Company) of all Proprietary Information developed by me and all Inventions made by me during the period of my employment at the Company, which records shall be available to and remain the sole property of the Company at all times.

**4.**    **DUTY OF LOYALTY DURING EMPLOYMENT AND NON-DISPARAGEMENT.** I agree that during the period of my employment by the Company I will not, without the Company's express written consent, directly or indirectly engage in any employment or business activity which is directly or indirectly competitive with, or would otherwise conflict with, my employment by the Company.

I agree that during the term of my employment with the Company, and continuing after my employment ends for any reason, I shall not make, publish, or communicate to any person or in any public forum any (a) false remarks, comments or statements concerning the establishment of the Company or its business, products, officers, directors, managers, founders or employees or (b) defamatory, derogatory or disparaging remarks, comments or statements concerning the Company, or any of its products, officers, directors, managers, or employees, in any manner likely to be harmful to its or their business, business reputation or personal reputation. Nothing in this provision shall prevent me from responding accurately and fully to any request for information to which I am required to respond by legal process or in connection with any administrative, investigatory, or other proceedings conducted by a governmental or regulatory agency. Additionally, nothing in this provision shall prevent, restrict or impede me from (a) exercising protected rights to the extent that such rights cannot be waived by agreement, (b) making any statements as reasonably required in connection with my employment or as part of my job duties and responsibilities, or (c) interfering with, restraining, or preventing employee communications regarding wages, hours or other terms and conditions of employment, as provided under Section 7 of the National Labor Relations Act.

**5. NO SOLICITATION OF EMPLOYEES, CONSULTANTS, CONTRACTORS, OR CUSTOMERS OR POTENTIAL CUSTOMERS.** I agree and understand that the Company invests substantial time, effort and resources in creating and maintaining Customer and/ or Potential Customer relationships and that I will have access to Proprietary Information and/or Specialized Training that provides me with special insight into and knowledge of these Customer and/or Potential Customer relationships. I further agree and understand that the Company invests substantial time, effort and resources in recruiting and assembling its personnel and that I will have access to Proprietary Information and/or Specialized Training that provides me with special insight into and knowledge of these relationships. Accordingly, I agree that during the period of my employment and for the two (2) year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, either directly or through others, except on behalf of the Company:

    **a.** Solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any employee of the Company to terminate his or her relationship with the Company;

    **b.** Hire, employ, or engage in business with or attempt to hire, employ, or engage in business with any person employed by the Company or who has left the employment of the Company within the preceding year of any such prohibited activity or discuss any potential employment or business association with such person, even if I did

not initiate the discussion or seek out the contact;

      **c.**      Solicit, induce or attempt to induce any Customer or Potential Customer, or any consultant or independent contractor with whom I had direct or indirect contact during my employment with the Company or whose identity I learned as a result of my employment with the Company, to terminate, diminish, or materially alter in a manner harmful to the Company its relationship with the Company; or

      **d.**      Solicit, perform, provide or attempt to perform or provide any Conflicting Services (as defined in Section 6 below) for a Customer or Potential Customer.

The parties agree that for purposes of this Agreement, a *"Customer or Potential Customer"* is any person or entity who or which, at any time during the one (1) year prior to the date my employment with the Company ends, (i) contracted for, was billed for, or received from the Company any product, service or process with which I worked directly or indirectly during my employment by the Company or about which I acquired Proprietary Information; or (ii) was in contact with me or in contact with any other employee, owner, or agent of the Company, of which contact I was or should have been aware, concerning any product, service or process with which I worked directly or indirectly during my employment with the Company or about which I acquired Proprietary Information; or (iii) was solicited by the Company in an effort in which I was involved or of which I was or should have been aware.

**6.**      **NON-COMPETE PROVISION.** In consideration for the Company's agreement to commence and/or continue my access to and use of Proprietary Information and Specialized Training related to my position as well as other valuable consideration, I agree that for the two (2) year period after the date my employment ends for any reason, including but not limited to voluntary termination by me or involuntary termination by the Company, I will not, directly or indirectly, as an officer, director, employee, consultant, owner, manager, member, partner, or in any other capacity solicit, perform, or provide, or attempt to perform or provide Conflicting Services within 100 miles of where the Company conducts business, including but not limited to locations where the Company performs research or development activities related to the Company's products, services or processes, nor will I assist another person to solicit, perform or provide or attempt to perform or provide Conflicting Services anywhere in the world where the Company conducts business, including but not limited to locations where the Company performs research or development activities related to the Company's products, services or processes.

The parties agree that for purposes of this Agreement, *"Conflicting Services"* means any product, service, or process or the research and development thereof, of any person or organization other than the Company that is substantially similar to or competitive with a product, service, or process in the chemical industry. This includes the research and

development done by the Company or its employees as of the time of my separation or about which I acquired Proprietary Information during my employment by the Company.

7. **REASONABLENESS OF RESTRICTIONS.** I agree that I have read this entire Agreement and understand it. I agree that this Agreement does not prevent me from earning a living or pursuing my career and that I have the ability to secure other non-competitive employment using my marketable skills. I agree that the restrictions contained in this Agreement are reasonable, proper, and necessitated by the Company's legitimate, competitive, protectable business interests based on my access to and use of Proprietary Information and/ or Specialized Training. I represent and agree that I am entering into this Agreement freely and with knowledge of its contents with the intent to be bound by the Agreement and the restrictions contained in it.

8. **NO CONFLICTING AGREEMENT OR OBLIGATION.** I represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement or obligation of any kind to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement.

9. **RETURN OF COMPANY PROPERTY.** Upon termination of my employment or upon Company's request at any other time, I will deliver to Company all of Company's property, equipment, and documents, together with all copies thereof, and any other material containing or disclosing any Inventions, Third Party Information or Proprietary Information and certify in writing that I have fully complied with the foregoing obligation. **I understand that it is my obligation to return all property belonging to the Company.** I agree that I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to Company. In addition, if I have used any personal computer, server, or email system to receive, store, review, prepare or transmit any Company information, including but not limited to, Proprietary Information, I agree to provide the Company with a computer-useable copy of all such Proprietary Information and then permanently delete and expunge such Proprietary Information from those systems at my own expense; and, at my own expense, I agree to provide the Company access to my system to verify that the necessary copying and/or deletion is completed. I further agree that any property situated on Company's premises and owned by Company is subject to inspection by Company's personnel at any time with or without notice. **I understand that I have no reasonable expectation of privacy on any device wherein Company information resides.**

Prior to the termination of my employment or promptly after termination of my employment, I will cooperate with Company in attending an exit interview and certify in writing that I have complied with the requirements of this section.

**10. LEGAL AND EQUITABLE REMEDIES.**

    **a.** I agree that it may be impossible to assess the damages caused by my violation of this Agreement or any of its terms. I agree that any threatened or actual violation of this Agreement or any of its terms will constitute immediate and irreparable injury to the Company and the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

    **b.** I agree that if the Company is successful in whole or in part in any legal or equitable action against me under this Agreement, the Company shall be entitled to payment of all costs, including reasonable attorney's fees, from me.

    **c.** In the event the Company enforces this Agreement through a court order, I agree that the restrictions of Sections 5 and 6 shall remain in effect for an additional period of twelve (12) months from the effective date of the Order enforcing the Agreement.

**11. NOTICES.** Any notices required or permitted under this Agreement will be given to the Company at its headquarters location at the time notice is given, labeled "Attention Constantine Zotos," and to me at my address as listed on the Company payroll, or at such other address as the Company or I may designate by written notice to the other.

Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, notice will be considered to have been given five (5) business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, notice will be considered to have been given on the delivery date reflected by the courier or express mail service receipt.

**12. PUBLICATION OF THIS AGREEMENT TO SUBSEQUENT EMPLOYERS OR BUSINESS ASSOCIATES OF EMPLOYEE.**

    **a.** If I am offered employment or the opportunity to enter into any business venture as owner, partner, consultant or other capacity while the restrictions described in Sections 5 and 6 of this Agreement are in effect I agree to inform my potential employer, partner, co-owner and/or others involved in managing the business with which I have an opportunity to be associated of my obligations under this Agreement and also agree to provide such person or persons with a copy of this Agreement.

    **b.** I agree to inform the Company of all employment and business ventures which I enter into while the restrictions described in Sections 5 and 6 of this Agreement are in effect, and I agree to show this Agreement to any subsequent employers I may have who operate in the beverage business. I also authorize the Company to provide copies of

this Agreement to my employer, partner, co-owner and/or others involved in managing the business with which I am employed or associated during the period restricted under this Agreement and to make such persons aware of my obligations under this Agreement.

13. **GENERAL PROVISIONS.**

    a. **Governing Law; Consent to Personal Jurisdiction; Dispute Resolution Procedure and Jury Waiver.** This Agreement will be governed by and construed according to the laws of the State of Texas as such laws are applied to agreements entered into and to be performed entirely within the State of Texas between Texas residents. I hereby expressly consent to the personal jurisdiction and venue of the state and federal courts located in the State of Texas for any lawsuit filed there against me by Company arising from or related to this Agreement.

    The parties are entering into this Agreement with the express understanding that this Agreement is clear and fully enforceable as written. If I ever decide later to contend that any obligation or restriction imposed on me by this Agreement is not enforceable as written or does not apply to an activity in which I intend to engage, or if I believe that the Company has materially breached its obligations under this Agreement, I will notify the Company in writing of my belief and meet with the Company's representative(s) at least thirty (30) days before engaging in any activity that foreseeably could fall within the questioned restriction to discuss resolution of such claims and other claims of breach (an "Early Resolution Conference") or filing any legal action seeking to enforce the terms of this Agreement. My failure to comply with this Paragraph shall be considered a material breach of this Agreement, entitling the Company damages consisting of all attorney's fees, court costs and any other expenses the Company incurs to either enforce this Agreement or defend itself from any claims I may choose to bring against the Company or its principals. Should I be unable to resolve disputes at the Early Resolution Conference, I may seek whatever remedies are provided by applicable law, except that: (a) by signing below, both the Company and I hereby waive any and all rights to a jury trial for any dispute between us; and (b) the Company and I shall resolve any disputes between us that are filed in a Texas State Court using the Trial by Special Judge procedures set forth in the 2020 version of Chapter 151 of the Texas Civil Practice & Remedies Code, while disputes filed in federal court shall be resolved through a bench trial only.

    b. **Successors and Assigns.** This Agreement is for my benefit and the benefit of the Company, its successors, assigns, parent corporations, subsidiaries, affiliates, and purchasers, and will be binding upon my heirs, executors, administrators and other legal representatives.

    c. **Employment At-Will.** I agree and understand that nothing in this Agreement shall change my at-will employment status or confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the

Company's right to terminate my employment at any time, with or without cause or advance notice.

   **d.** **Waiver.** No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

   **e.** **Advice of Counsel.** I ACKNOWLEDGE THAT, IN EXECUTING THIS AGREEMENT, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION OF THIS AGREEMENT.

   **f.** **Entire Agreement.** The obligations pursuant to Sections 1 and 2 (except Subsection 2.6) of this Agreement shall apply to any time during which I was previously engaged, or am in the future engaged, by the Company as a consultant or employee if no other agreement governs nondisclosure and assignment of inventions during such period. This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter of this Agreement and supersedes and merges all prior discussions between us; provided, however, prior to the execution of this Agreement, if Company and I were parties to any agreement regarding the subject matter hereof, that agreement will be superseded by this Agreement prospectively only. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged. Any subsequent change or changes in my title, position, status, role, duties, salary, compensation or benefits or other terms and conditions of employment or service will not affect the validity or scope of this Agreement.

*Signatures on Following Page*

EMPLOYEE: Alex deGrood

**I HAVE READ, UNDERSTAND, AND ACCEPT THIS AGREEMENT AND HAVE BEEN GIVEN THE OPPORTUNITY TO REVIEW IT WITH INDEPENDENT LEGAL COUNSEL.**

*(DocuSigned by: 663A2A48F57E485...)*

Employee Signature

8/2/2020

Date

**COMPANY**:

**AGREED AND ACCEPTED:**

*(DocuSigned by: Constantine Zotos, 3B63C74E79EE419...)*      Constantine Zotos

Signature

CEO/Partner

Title

8/2/2020

Date

# EXHIBIT A

Except as listed in Section 2 below, the following is a complete list of all inventions or improvements relevant to the subject matter of my employment by Modern Chemical (the "Company") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

N/A
_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

Other than the above, I have no other inventions or improvements relevant to the business of the Company.